# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### TALLAHASSEE DIVISION

BENJAMIN T OWENS,

    *Petitioner,*

v.                               CASE NO. 4:16cv467-MW/CAS

SECRETARY DEPARTMENT OF CORRECTIONS,

    *Respondent.*

_____/

## ORDER ADOPTING REPORT AND RECOMMENDATION

This cause comes on for consideration upon the Magistrate Judge's Report and Recommendation dated November 30, 2017. (ECF No. 17). The parties have been furnished a copy of the Report and Recommendation and have been afforded an opportunity to file objections pursuant to Title 28, United States Code, Section 636(b)(1). Plaintiff has filed objections at ECF No. 18. I have made a de novo review based on those objections. Having considered the Report and Recommendation, and the timely filed objections, the Report and Recommendation is adopted and its reasoning incorporated into this order. This Court writes separately to discuss matters presented in petitioner's objections, ECF No. 18.

Petitioner testified in the state 3.850 hearing that counsel wrongly advised him that he faced only a 15-year maximum sentence that could not

be enhanced and that the prosecutor corroborated this advice during a June 3, 2011, hearing, causing petitioner to reject a three-year plea offer. Petitioner further testified that counsel then failed to tell him that the three-year plea deal was still being offered by the prosecution up to a week before trial. He testified that he "would have taken the advantageous plea if counsel would have conveyed the plea in a timely manner instead of allowing the plea to expire." ECF No. 14, Ex. I at 37-39. Also, petitioner testified that his defense counsel "never advised" him that his sentence could be enhanced and that he faced a 30-year maximum sentence. *Id.* at 132.

The state judge, however, credited the testimony of defense counsel over that of petitioner, and this Court agrees with the Magistrate Judge that such a finding was not unreasonable. First, the state judge noted that petitioner changed the level of certainty he had about whether he was told about the 30-year maximum. Initially, he was sure that counsel "never advised" him that he faced the maximum. *Id.* Later, he stated that at least he could "[n]ot recollect" such advice. *Id.* at 136.

Second, defense counsel and the prosecutor both testified that petitioner was reminded of the three-year plea deal several times after he received notice of the government's intent to enhance petitioner's sentence to a possible 30-year sentence. ECF No. 17 at 10-12. Defense counsel testified that, before trial, he conducted an hour-and-a-half long video conversation

with petitioner in which they discussed the thirty-year maximum and the three-year offer. Defense counsel testified that petitioner chose not to go to trial because of his prior success in two trials. Defense counsel further stated that he spoke with petitioner several times about the thirty-year maximum and the open three-year plea offer leading up to trial. The prosecutor confirmed defense counsel's testimony, stating that defense counsel told the prosecutor several times after the notice of intent to enhance was filed and before trial that petitioner declined to accept the three-year offer because he liked his chances at trial.

In his objections, petitioner first points out that the Magistrate Judge did not mention that the prosecutor, in the June 3, 2011, hearing, incorrectly corroborated defense counsel's advice that the sentence was not enhanceable. This makes no difference, however, because the state judge was not unreasonable in finding that petitioner later learned that he faced a thirty-year maximum at a time that he knew that the three-year plea offer was still available. Thus, any misconception he suffered after the June 3, 2011, hearing was corrected in time for him to accept the three-year plea offer.

Petitioner also argues in his objections that the state judge and Magistrate Judge failed to properly apply the directive from *Alcorn v. State*, 121 So. 3d 419, 432 (Fla. 2013), that "[p]rejudice therefore is determined based upon a consideration of the circumstances as viewed at the time of the

offer and what would have been done with proper and adequate advice."
Petitioner appears to believe that this language means that this Court should
only look at the advice given to petitioner at the moment the three-year offer
was first made, even if the misinformation was later corrected before the offer
was withdrawn.  That is not what *Alcorn* holds.

The defendant in *Alcorn* rejected a twelve-year plea offer upon being
incorrectly advised that his maximum sentence was thirty years, when in fact
he faced a maximum sentence of life imprisonment because he qualified as a
habitual felony offender. The lower court concluded that Alcorn could not
show prejudice because, after trial, he ultimately received a thirty-year
sentence—the same sentence that his counsel incorrectly advised was his
maximum sentence.  The Florida Supreme Court disagreed, finding that the
lower court instead should have analyzed whether there was a reasonable
probability that Alcorn would have chosen to accept the plea had he been
correctly advised.  That is, in assessing prejudice, the district court was
required to determine whether Alcorn would have accepted the State's
twelve-year plea if counsel had correctly informed him that he faced a
potential life sentence under the HFO statute, not a thirty-year sentence.  *Id.*

The state court in the instant case reasonably found that the scenario
in *Alcorn* did not happen here.  That is, although petitioner was initially
misinformed about his maximum sentence liability, that misconception was

remedied before the chance to accept the plea offer expired. Even though that technically happened after the moment the offer was initially made, the offer was still open and could have been knowingly accepted by petitioner if he chose to. Therefore, the state judge, in finding no prejudice in the instant case, did not rely upon the fact that petitioner's sentence later happened to be the same as the one counsel wrongly advised was the maximum. Instead, the state judge correctly concluded that *Alcorn* is not even triggered by the instant case because petitioner was correctly advised about his maximum sentence at a time when he knew he could still accept the plea offer.

Petitioner's objections regarding the specificity of the search warrant are also without merit. In his second ground for relief, petitioner argues the following:

> Defense counsel, Mr. Prince, was ineffective for failing to effectively challenge, (in the motion to suppress), a general warrant for lack of specificity, where items that investigating police sought were a .45 caliber semi-automatic pistol that was used in a shooting. The search warrant contained only the vague and general descriptions of a "Firearm, ammunition, and a guncase." See Ex. "C", (Search warrant/affidavit).

ECF No. 1. This statement is belied by the record. The affidavit for search warrant regarding the 504 Putnam Drive property consisted of four pages, included a lengthy description of the probable cause for the search. In that description, the affiant averred that .45-caliber shell casings were found at the scene, the victim described the gun involved in the shooting as being a

.45-caliber gun, and two .45-caliber bullets were removed from the victim.

After so describing the firearm used in the shooting, the affiant concludes

with the following: "It is more probable that the firearm used in the shooting

will be located at Hardison's second residence at 504 Putnam Dr….[Y]our

affiant believes and had good reason to believe that certain evidence, more

particularly described herein of the crime of Attempted First Degree Murder,

is now being kept within said premises." This language makes clear that the

search is specific to a firearm, ammunition and guncase used in the crime

and that such firearm is a .45-caliber pistol. Thus, it is simple false to state

that the "search warrant contained only the vague and general descriptions

of a 'Firearm, ammunition, and a guncase.'" Any argument to suppress based

on the specificity of the warrant would have been meritless. Thus, counsel

was not ineffective for declining to raise this losing argument.

In his objections, petitioner also argues that the Magistrate Judge

"incorrectly concludes that the distinction that the specific firearm found with

Petitioner was of a different make than the one actually involved on [sic] the

shooting has no effect on the search warrant's validity." ECF No. 18 at 4.

This Court agrees with the Magistrate Judge that the validity of the search

warrant is not undermined by the fact that the gun found, a 9-millimeter

handgun, was different than the one searched for. As described above, the

search warrant was valid because it adequately specified the object of the

search, a .45-caliber handgun.  Because of that, when the officers executed the warrant at 504 Putnam Drive, they were conducting a lawful search.  The plain-view doctrine applies when, during the course of a lawful search for certain objects, the police come across other items of incriminating character. *United States v. Reeves*, 604 F. App'x 823, 826 (11th Cir. 2015) *citing United States v. Smith*, 459 F.3d 1276, 1290 (11th Cir.2006).

Here, the officers in conducting the search merely examined an item (the knit cap) which reasonably could have contained the object of their search (a .45-caliber handgun).  In so doing, the officers came across another item that incriminated petitioner because of his felony history (the 9-millimeter handgun).  Under the plain-view doctrine, evidence of the 9-millimeter handgun is not subject to suppression.  In other words, to use petitioner's example from his objections, if officers lawfully executing a search warrant for a .22 -caliber handgun come across a bazooka in plain view, the evidence of the bazooka would be admissible if its incriminating character is immediately apparent, even if unrelated to the original crime. Thus, petitioner's counsel was not ineffective for failing to raise this meritless

argument in the motion to suppress.

For the reasons given above,

**IT IS ORDERED:**

1. The Magistrate Judge's Report and Recommendation is adopted and incorporated by reference in this order.

2. The Clerk is directed to enter the following judgment: "The Petition under 28 U.S.C. § 2254, ECF No. 1, is denied. A certificate of appealability is denied."

3. The Clerk is directed to close the file.

**SO ORDERED on February 25, 2018.**

**s/Mark E. Walker**
**United States District Judge**